In the Matter of the Revocation of Letters of Administration issued to JOHN GILLINGHAM.

*Supreme Court, Fifth Department, General Term, December 30, 1889.*

1. *Appeal. Surrogate.*—It is the duty of the surrogate, where written requests to find facts and conclusions of law are submitted to him, to note upon the margin of each of such requests his assent or refusal to find the same.
2. *Same.*—The general term, under section 2586 of the Code, has the same power to decide questions of fact as the surrogate possesses and can do complete justice on the appeal without sending the case back for a rehearing.
3 *Evidence. Declarations.*—The declarations of a party to others, not parties, are incompetent in his own favor.
4. *Same. Presumption.*—The presumption of ownership is not overcome by proof of loose and unconclusive declarations.

Appeal by the petitioner, Malinda Wheeler, from a decree of the surrogate of Niagara county, granted May 22, 1888, dismissing her petition upon the merits, and also an appeal from an order of such surrogate opening the former decree and allowing costs to the respondent of a suit for a like purpose pending in the supreme court.

*Henry M. Davis*, for appellant.

*David Millar*, for respondent.

MACOMBER, J.—The petition in this proceeding was filed on the 28th day of February, 1887. On the 18th day of March of that year an action was brought in the supreme court having in view the same general relief that is sought by this petition, namely, the removal of the administrator of the estate of Sarah Ann Gillingham, for the reason that he had not included certain personal property in his inventory belonging to the deceased, and because his bond was insufficient and himself irresponsible.

The petitioner is a creditor of Sarah Ann Gillingham, deceased. This fact is found by the surrogate, although he seems to have refused or failed to find the amount of the indebtedness of the estate to her. For the purposes of this appeal, however, such omission is unimportant.

The decedent, Sarah Ann Gillingham, was married to John Gillingham, the respondent, in the month of March, 1883. The wife died on the 26th day of September, 1886. Prior to her marriage she was the owner in fee, and in possession of, a farm in the town of Wilson, in Niagara county, consisting of fifty-one acres of land, together with certain personal property necessary for conducting the farm, besides four cows. She was also possessed before marriage of certain swarms of bees. The increase of this stock and the increase of the bees, a certain quantity of wheat and oats claimed on one side to be a much larger amount than on the other,

with certain growing wheat, remained upon the farm of the deceased at the time of her death, and the respondent, who was appointed administrator of her estate, refused to include the same in the inventory, or to become chargeable therefor, in which position he has been sustained by the decree of the surrogate.

Many written requests to find facts and conclusions of law were submitted by the petitioner's counsel to the surrogate, which the record shows he has not passed upon either by finding or refusing to find the same. It was the duty of the surrogate, under §§ 1022 and 2545 of the Code of Civil Procedure, to note upon the margin of each of such requests his assent or refusal to find the same. The appellate court should not be put to the necessity of a careful comparison of the proposed findings and the actual findings made by the surrogate, in order to see whether the failure to find has wrought injustice to the appellant. This omission in the record would justify us in sending the case back to the surrogate, with instructions to note upon the requests his determination of each proposed finding; but as we have come to the conclusion that the decree upon the merits cannot stand, we waive this omission in practice in this instance.

Before proceeding to the merits it is, perhaps, proper to say that the order of the surrogate above mentioned, opening his first decree, and by an amendment thereof granting costs to the respondent, who was a defendant in an action in the supreme court, cannot be reviewed upon this appeal. That case was sent to the surrogate by an order of a special term sitting in Niagara county, whether by consent, however, or not, does not clearly appear.

If it was not so turned over to the surrogate by the consent of both sides, an appeal from such order clearly would have been maintainable. The amendment, therefore, of the decree of the surrogate by which he obeyed the order of the special term and decided not only the case in his own court, but that in the supreme court, was correctly made, provided

his decision upon the principal question can be maintained. This brings us to the merits of this appeal.

Sarah Ann Gillingham, at the time of her marriage with the respondent, was the absolute owner of the farm and the personal property then upon the same. There is no evidence that at the time of her marriage, or afterwards, she relinquished any portion of her farm to her husband for cultivation. There is no written agreement or evidence showing that she ever recognized her husband's ownership of any part of the personal property or of its increase. A presumption therefore arises, that notwithstanding her marriage she continued the absolute owner of all of this property, and was entitled to its full and complete enjoyment while she lived, and that at her death the real estate passed to her heirs at law and the personal property to her personal representatives. The testimony which has been adduced from several witnesses to fortify the claim now made by the husband that the crops and the increase of the animals all belonged to him consists solely of loose, unsatisfactory and inconclusive declarations said to have been made by the deceased at times when the question could not have been uppermost in her mind as to whether she or her husband actually had the title to the property. This evidence is insufficient to overcome the strong presumption made by law that the property notwithstanding her marriage, continued to be her own under the acts of 1848, 1849, 1860 and 1862. Stanley *v.* National Union Bank, 115 N. Y. 136. This evidence, however, is completely met and in our judgment overcome by the more direct admissions, sworn to by several persons, made by the respondent at different times to the effect that he did not own the property.

As a question of fact, therefore, we are of the opinion that the claim made by the petitioner that most of the personal property belonging to the deceased had been omitted from the inventory was substantiated by a preponderance of the evidence.

There are certain exceptions to the admission and rejection of evidence which must also be upheld, although the same may be deemed to be unnecessary, inasmuch as we have come to the above conclusion upon the evidence as it stands.

The respondent was permitted to testify under objection and exception to a conversation which he had with the witnesses Willard Brown and Harriet Brown, upon matters in regard to which they had not testified, under cover of which he gave wholly incompetent evidence of his ownership and right to the possession of this personal property. This testimony consisted of mere declarations which the witness swore he had made to persons other than the parties to this proceeding.

This error in the rulings of the learned surrogate would necessarily lead to a reversal of the judgment, and a further hearing thereon, except for the conclusion, as above stated, that upon the merits of the case as disclosed, even by this record, the substance of the prayer of the petition ought to have been granted. We believe that we have the power to do complete justice on the appeal without sending the case back for a rehearing. Under § 2586 of the Code of Civil Procedure this appellate court has the same power to decide questions of fact which the surrogate possessed. By the same section we may, if we see fit, receive further testimony or documentary evidence, and may appoint a referee. There is no provision of the Code, of which we are aware, which would enable us to send the case to the circuit or to the county court for a trial by jury.

The decree of the surrogate should be reversed and the prayer of the petitioner granted to the extent of requiring the administrator to file an amended inventory including the property set forth in the petition, or so much thereof as actually remained on the farm at the time of the death of the intestate, together with the value thereof, and that his bond be increased from the sum of $200 to the sum of $2,000 to be filed within twenty days after the entry of an order on

this decision, and in default thereof the respondent be removed, and that the surrogate appoint another administrator in his place, with a suitable bond, with costs of this appeal and of the surrogate's court to be paid by the respondent personally.

BARKER, P. J., and DWIGHT, J., concur.

### NOTE ON PRACTICE ON APPEALS FROM SURROGATES' COURTS.

*Exceptions and findings.*—Where the surrogate does not make any findings, as required by § 2545 of the Code, and the record does not contain any exceptions to the findings, or to the decision of the surrogate, the general term does not have jurisdiction, upon an appeal, to review the surrogate's decision upon the facts. Matter of Sprague, 125 N. Y. 732. If the appellant desires to bring to the general term or to the court of appeals questions of fact or of law, and to review the decisions of the surrogate in reference thereto, he must procure findings of fact and of law, and make proper exceptions thereto. Id.; Hewlett v. Elmer, 103 N. Y. 156; Matter of Kellogg, 104 Id. 648; Angevine v. Jackson, 103 Id. 470.

Where the record discloses a failure to comply with that part of § 2545 of the Code, which provides that, upon the trial of an issue of fact, the surrogate must file in his office his decision in writing, which must state separately the facts found and the conclusions of law, the general term has nothing before it except the testimony, the decree and the notice of appeal. Matter of Peck, 62 Hun, 622.

It has been repeatedly held that this plain language of the section above cited cannot be disregarded. Id. The appellant must procure such findings as will present the question which he desires to argue. Id. Angevine v. Jackson, *ante;* Matter of Hood, 104 N. Y. 103.

In Hewlett v. Elmer, *ante,* it was said that, by § 2545 of the Code, the practice upon a trial by the surrogate of an issue of fact, and preparation of papers upon which an appeal should be heard, was assimilated to the proceedings upon and after trial by the court without a jury.

In Angevine v. Jackson, *ante,* it was held that the purpose was to assimilate the practice upon appeals from a surrogate's decree in the prescribed cases to that which regulated appeals from a judgment rendered by the court or a referee, and to substitute a system which would point out specific errors, and evolve the exact questions intended to be reviewed. The authority of this case and that of Hewlett v. Elmer, *ante,* with regard to the necessity for a decision by the surrogate, stating separately the facts found and the conclusions of law, has never been questioned. It cannot well be questioned while the language of § 2545 remains unrepealed.

The necessity for a separate statement of findings of facts and conclusions of law is expressly recognized in Burger v. Burger, 111 N. Y. 523. In

this case, the doctrine of Angevine v. Jackson, *ante*, was modified, but only as to the requirements of exceptions to findings of fact as to which there is a conflict of evidence. When the court, in the latter case, speaks of an appeal from the decision of the surrogate on the facts as well as the law, reference is undoubtedly had to the decision defined by § 2545 of the Code. The result of this late decision is to assimilate the practice on appeals from a surrogate's decree still more closely to that which governs in ordinary litigation.

§ 2545 of the Code permits an exception to be taken to a ruling of the surrogate on the trial before him of an issue of fact, including a finding or refusal to find upon a question of fact, in a case where such an exception may be taken to a ruling of the court upon a trial without a jury, upon an issue of fact as prescribed in art. 3, title 1 of chap. 10 of the Code, and also to a finding or refusal to find upon a question of fact, made on the settlement of the case. Burger v. Burger, *ante*. But the questions, which may be raised by exception under the section above cited, are questions of law. Id. The finding of a material fact without evidence, or a refusal to pass upon a question of fact, or to find a fact which the evidence conclusively establishes, if properly excepted to, raises a question of law for the appellate court, and to such rulings on questions of fact, this section permits an exception. Id. But the section has no relation to findings on controverted facts, or to refusals to find facts not conclusively established, or which are not clearly inferable from the evidence. Id.

An appeal from the decision of the surrogate on the facts as well as the law, is alone sufficient to give the appellate court jurisdiction to review the facts, and an exception is neither necessary nor proper. Burger v. Burger, *ante*. In the ordinary case of an action triable by jury, the general term has power to review the facts, and reverse and order a new trial if justice seems to require it, though there may be evidence to sustain the verdict. In that case, no exception is necessary to give the court jurisdiction. Id. It is necessary, however, that a motion for a new trial should have been made and denied by the court below, for the plain reason that on such a motion the trial judge has, for the first time, an opportunity to pass on the facts, and the party making the motion may, by that means, obtain the necessary relief without an appeal. But an appeal from an order denying the motion gives the appellate court jurisdiction to review the facts, and it does not depend on any exception. Matthews v. Meyberg, 63 N. Y. 656; Hume v. Mayor, etc., 74 Id. 268; Boos v. Ins. Co., 64 Id. 236.

The true rule under the Code is, that an appeal on the facts from the decree of a surrogate admitting or refusing to admit a will to probate, brings up for review in the general term the question of the sufficiency, weight or preponderance of evidence, and the general merits of the decision. Burger v. Burger, *ante*. It is not necessary, in such case, that any exception should be taken to the findings of fact, or that there should be any request for findings, in order to give the general term jurisdiction to review the facts, and reverse or affirm the decision of the surrogate thereon. Id.

Where the appeal is also upon the law, as well as upon the facts, only

such questions of law can be considered as have been properly raised by exception. Burger v. Burger, *ante*. If an exception is taken to the conclusion of law of the surrogate, it raises the question whether it is justified by the facts found. Id. If taken to a finding of fact, it presents the question whether there is any evidence to sustain the findings. Id. Where the surrogate refuses to make any findings whatever on a question of fact, or where he makes, or refuses to make, a ruling upon any question of law, an exception lies and his decision may be reviewed in the appellate court. Id. But an exception to facts found, or to a refusal to find upon a question of fact, is only important to entitle the appellant to have a review, first in the general term, and afterwards in the court of appeals, of the strictly legal question which it is the office of an exception to present. Id. But in the general term, the facts are open for review without any exception. Id. An application to a court for a new trial on the facts in no proper sense presents a question of law. It is an appeal to the conscience of the court, and the court is asked to consider whether, on the whole facts, a new trial ought to be had. Id.

The review, on the facts by the general term, of the decision of the surrogate, admitting a will to probate, still retains, in many features the character of a rehearing in equity. Burger v. Burger, *ante*. This is evident from § 2586 of the Code, which permits the general term, on appeal from the surrogate on the facts, to receive further testimony or documentary evidence and appoint a referee, and declares that the appellate court has the same power to decide the questions of fact which the surrogate had. Id.

Some things stated in the opinion in Burger v. Burger, *ante*, may not be consistent with some expressions in Angevine v. Jackson, *ante*. But the principle decided in the latter case, that there must be an exception in order to raise a question of law in the appellate court, is unquestionably sound.

Where the decree of the surrogate is irregular because it is not based upon a proper decision, the remedy is by motion to set it aside for such irregularity or to propose findings, and except to a refusal to pass upon them. Matter of Peck, *ante*.

*Jury trial in probate cases.*—Where, upon the hearing before the surrogate, there is no conflict in the evidence, the provision of § 2588 of the Code, declaring that, when the reversal of the surrogate's decree made upon petition to admit a will to probate is founded upon a question of fact, the appellate court must make an order directing a trial by a jury of the material questions of fact arising upon the issues between the parties, does not apply. Matter of Hunt, 110 N. Y. 278. In such case, it is proper for the general term, on reversal of the surrogate's decree, to direct the surrogate to admit the will to probate, though the order states that the reversal was upon questions of fact as well as of law. Id. The statutory provision applies only where there is a real conflict in the evidence, not where the surrogate's court and the general term simply differ in their conclusions from undisputed facts. Id.

The statute should receive a reasonable construction, and literal obedience is not to be given to its language, where it will work an unreasonable, if not absurd result. Id. The language in this section requires an order for a jury trial only where the reversal is founded upon a question of fact. Id. The legislature undoubtedly intended that, only where such was actually the case, and there was a real conflict of evidence and the surrogate's court and the general term differ in their conclusions, the conflict should be settled by a jury trial in the mode prescribed. Id. But it is not a construction reconcilable with reason that a new trial before a jury should be deemed necessary, when there is no conflict in the facts and the matter is one of conclusion from the facts. Id.

The general power of the supreme court, at general term, to review the decree of a surrogate admitting a will to probate, and to reverse his decree on the facts and order issues to be tried by a jury, when in its judgment the decision is contrary to or against the weight of evidence, or the facts are so doubtful that, in the opinion of the general term, justice will be promoted by a retrial before a jury, is clearly recognized by the Code and is incontestable. Burger v. Burger, ante. But the question is, by what procedure is this power to be invoked, and how is the right of the party seeking its exercise regulated?

There has always existed in this state, in some tribunal, a supervisory power over the decisions of a surrogate in probate cases upon the facts. Id. Under the Revised Statutes, an appeal was permitted to the circuit judge from a decision of a surrogate admitting or refusing probate of a will. Such judge was authorized to reverse the decision on the law or the facts, and, if the reversal was on a question of fact, to direct a feigned issue to be tried by jury. 2 R. S. 66, §§ 55, 57.

This subject was not affected by the former Code. Burger v. Burger, ante. By chap. 185 of 1848, the jurisdiction theretofore vested in the circuit judges in probate cases was transferred to the supreme court, and was thereafter exercised by the general term. Id. The practice, in the supreme court, was prescribed by rule 44 of the general rules of the supreme court. It provided that the appeal should be executed, by petition, by the party appealing, which should briefly state the general nature of the proceedings and of the sentence, order or decree appealed from, and should specify the fact or facts complained of as erroneous, unless the whole sentence, order or decree was claimed to be so, in which case it was sufficient to so state. Id. It was not necessary, under the Revised Statutes, or the practice prescribed by rule 44 after the passage of the act of 1848, that an exception should have been taken by the appellant from the decision of the surrogate admitting a will to probate, as a prerequisite to the jurisdiction of the appellate court to pass upon the facts, and, in case of a reversal upon the facts, to direct a feigned issue. Id.

Under rule 44, the filing of the petition, alleging that the decision of the surrogate was erroneous on the facts, raised the question whether his decision was supported by the facts or by the weight of evidence, and enabled the court to consider whether justice required a new trial before a

jury. Id. The review was in the nature of a rehearing in equity. The court examined the case *de novo ;* and it was held by the chancellor that the appellate court might allow the parties to introduce new allegations, or further proofs, in analogy to the procedure under the civil law. Gardiner *v.* Gardiner, 34 N. Y. 164; Clapp *v.* Fullerton, Id. 195; Devin *v.* Patchen, 26 Id. 441.

The practice has not been changed by the present Code, and it is not now necessary, in order to permit the general term to review the facts on an appeal from the decision of a surrogate granting probate, that his finding of facts must be challenged by an exception. Burger *v.* Burger, *ante.*

Where the surrogate rejects a will on account of the mental incapacity of the testator, but does not decide the question of undue influence it is proper for the general term, on reversal, to direct a jury trial without first requiring the surrogate to pass upon the question of undue influence. Matter of Mahoney, 60 Hun, 579. In such case, every question involved will be open for litigation and determination, and, therefore, the reason upon which the decision in the case of Dack *v.* Dack, 84 N. Y. 663, was based, has no application. Id.

In Dack *v.* Dack, *ante,* the codicil to a will was contested for want of due execution, and on the ground of undue influence. The surrogate refused to admit the codicil to probate upon the first, and failed to pass upon the latter, ground. The general term, upon appeal, reversed the decree of the surrogate and directed him to admit the codicil to probate. The court of appeals, upon appeal to that court, held the disposition of the case by the general term to be erroneous, on the ground that the direction to admit the will to probate foreclosed all controversy and afforded no opportunity for the decision of the question which the contestants had a right to litigate. The judgment in effect excluded the defense of undue influence upon which the contestants had the right to insist and which they were entitled to have decided.

When the general term is not entirely satisfied, on appeal from a decree refusing probate, with the conclusions of fact reached by the surrogate, it should order a trial of the leading issues of fact arising from the evidence presented upon the hearing had before the surrogate, by a jury at the circuit. Van Orman *v.* Van Orman, 58 Hun, 606; Matter of Martin, 98 N. Y. 193.

In Matter of Martin, *ante,* every question, upon which there was evidence, was found in favor of the proponent. The affirmative proposition, which the contestant asserted was not only not established, but as to it there was such an entire absence of testimony as to create a doubt as to the *bona fide* of its assertion. The reversal of the decision of the surrogate cannot be regarded, in such case, as dependent upon conflicting evidence, or influences, but upon a question of law. There was no question of fact upon which the court differed, and consequently there could be no issue for a jury. In such case, the appeal to the general term is not governed by § 2588 of the Code. Id. This section only applies when the reversal is founded upon a question of fact. Id.

In Valentine *v.* Valentine, 41 Hun, 642, it was held that the general term must order a jury trial, where it reverses a decree of the surrogate in matters of probate, and has no other power under § 2588 of the Code.

Where a general term reviews the testimony upon which the surrogate admits a will to probate, and reverses his decree on questions of fact, it becomes its duty to enter an order requiring the submission of the questions of fact to a jury. Matter of Jacott, 53 Hun, 634. The Code is mandatory in this respect. Id.; § 2588 of Code; Sutton *v.* Ray, 72 N. Y. 482. Under an order for a jury trial of issues of fact in reference to the execution of a will, testamentary capacity and undue influence, the case stands, in most respects, as though the questions of fact had arisen in an action in which the contestant had the right to a jury trial as matter of law. Matter of Jacott, *ante.* When viewed from this standpoint, the course of procedure is very simple. Under such an order, the circuit court and jury are together bound to do just what the surrogate was bound to do in the first instance, to make due inquiry into all the facts and circumstances attending the execution of the proposed instrument, the capacity of the decedent, and his freedom from restraint and undue influence. Id. The questions of law are for the court, and the questions of fact, whatever they are, ought to be submitted to the jury. Id.

In Matter of Hunt, *ante,* the only testimony was that of the subscribing witnesses. Such testimony was not contradictory, yet did not prove in exact language the existence of the necessary facts. The surrogate held the testimony not sufficient. The general term was of a contrary opinion, reversed his decree and directed him to admit the will to probate. The judgment of the general term contained a statement, that the decree of the surrogate was reversed upon questions of fact. The court of appeals held, notwithstanding such statement, that, where it appears that all the evidence is returned, it can look at the case and see if there was any real conflict. If not, the general term, in reversing the surrogate, has the power in itself to decree the admission of the will to probate, where it simply differs with the surrogate in regard to the proper inferences to be drawn from evidence not conflicting. This is the case only where there is but one fair and legitimate inference properly to be drawn, and that one in favor of the proof of the execution. A question of fact may possibly arise upon evidence not conflicting in terms, where inferences may be drawn either way, and where a decision either way will not be considered as against evidence.

In the Matter of Wilcox, 131 N. Y. 610, there was another issue which was properly made before the surrogate. This was as to the alleged alteration of the instrument after its execution by the testator. This issue had never been tried. No evidence was given upon it before the surrogate, and there was no occasion to do so. The surrogate, upon the conclusion of the evidence offered on the part of the proponent upon the question of the due execution of the will, held that its proper execution had not been proved, and upon that ground refused to admit it to probate. There was, therefore, no necessity for the contestants, in view of a decision in their favor, to ask to be permitted to give evidence upon another issue. The probate of the

will had been refused, and that was all the contestants asked or desired. In such case, the general term, upon reversing the surrogate's decree, should have remitted the proceedings to him for the trial of the issue as to the alteration of the proposed will after its execution.

In the case of Dack *v.* Dack, *ante,* the general term made a decree directing the surrogate to admit the will to probate. The court of appeals held that it should have remitted the case to the surrogate to be heard upon the question not theretofore passed upon by him.

There is nothing in the present Code which changes the rule thus laid down in the case last cited. Matter of Wilcox, *ante.*

*Admission or rejection of evidence.*—Where the evidence is not only competent, but is decidedly material proof on the part of the party offering to introduce it, § 2545 of the Code cannot have the effect of obviating an objection to its exclusion. Matter of Mellen, 56 Hun, 553. It is to be presumed, where the evidence is both material and competent, that the ruling rejecting it is prejudicial to the appellant. Id.

Prior to the enactment of § 2545 of the Code, the rule was settled, in analogy to the rule governing appeals in equity, that the admission of improper evidence in a proceeding before a surrogate for the probate of a will was not a ground for reversing his decree, if it appeared on the whole case that the decree was right. Matter of Smith, 95 N. Y. 516 ; Brick *v.* Brick, 66 Id. 144. In other words, the appellate court disregarded errors in the admission or rejection of evidence in such cases, which, in its judgment, did not affect the substantial rights of the parties. Id. § 2545 of the Code was probably intended to incorporate into the statute the pre-existing rule administered by the courts. Id. The section could not have intended to prescribe that no decree of a surrogate should be reversed for errors in admitting or rejecting evidence, unless it appeared to the appellate court, in the one case, that evidence erroneously admitted furnished the only foundation for the judgment, or, in the other case, that the rejected evidence, if it had been admitted, would have conclusively entitled the appellant to a decree in his favor. Id.

It is the general rule, alike of reason and of law, that litigants may present to the court all relevant and competent evidence bearing upon the issues between them, and that incompetent and irrelevant evidence should be excluded, so that the case shall be heard and decided upon the competent and legal proof. Id. The admission of incompetent evidence was, before the Code, presumptively injurious. But § 2545 may have changed this presumption. Id. Under this section, when the court of review finds that incompetent evidence has been received or competent evidence rejected, it then becomes its duty to determine whether the error prejudiced the party against whom it was committed. Id. If it appears to the court that it did not prejudice him, then it is its duty to affirm the decree. If, on the other hand, the evidence erroneously admitted or rejected is important and material, and the court cannot say that, notwithstanding the error, the judgment is right, or, if it entertains a reasonable doubt upon the subject, then a case is presented where the party excepting is necessarily prejudiced

within the meaning of this section. Id. He is deprived of the opportunity of having his case decided upon the competent and material facts, and it is not a just answer to say that, on a re-trial, the same conclusion may possibly be reached. Id.

Under the practice, as it prevailed before the enactment of § 2545 of the Code, if the necessary facts were established by unobjectionable evidence, it was held to be immaterial that incompetent witnesses also certified to the same matter. Loder v. Whelpley, 111 N. Y. 239; Schenck r. Dart, 22 Id. 420. The erroneous admission of evidence was no ground for reversal, if the facts were established by legal evidence. Id.; Gardiner v. Gardiner, 34 N. Y. 164; Clapp v. Fullerton, Id. 190. In obedience to § 2545, it has been since held that an appeal must fail unless it is apparent that, without the improper evidence, the respondent would not have succeeded. Loder v. Whelpley, ante; Matter of Ross, 87 N. Y. 514; Snyder v. Sherman, 88 Id. 656. When this does appear, the appellant brings the case within the statute. Matter of Smith, 95 N. Y. 516. If the judgment is clearly right, notwithstanding the error, it is no ground for reversal. Id.

Where testimony, prohibited by § 835 of the Code, has been improperly received by the surrogate, in proceedings for the probate of a will, it is not a sufficient ground for a reversal of his decree, unless it appears to the appellate court that the exceptant was necessarily prejudiced thereby. Loder v. Whelpley, ante. To authorize a reversal, it must appear that, without the improper evidence, the respondent would not have succeeded. Id.

In Snyder v. Sherman, 88 N. Y. 656, it was held that, under § 2545 of the Code, to justify a reversal, it must appear that, had competent evidence, which was rejected, been received, the appellant's case would not have failed, or without improper evidence, which was received, the respondent's case was deficient.

*New evidence.*—The power conferred upon an appellate court by § 2586 of the Code to receive, in its discretion, further testimony or documentary evidence, and to appoint a referee, upon an appeal taken upon the facts from the decree of the surrogate, should be cautiously used. Matter of Hannah, 45 Hun, 561. It practically opens the case and gives a rehearing on new evidence before an appellate tribunal. If one side is allowed to introduce new evidence, it would seem unjust not to permit the other side to do the same. Id.

In the case last above cited, the appellant, pending an appeal taken from a decree of a surrogate's court refusing probate of a will, on the ground of the mental incapacity of the testatrix, moved that the argument be postponed, and that the testimony of certain witnesses be taken on requisition. On the hearing before the surrogate, testimony was given by the contestant, who was the only daughter of the testatrix, that there had been little or no correspondence for many years between the testatrix and certain relatives in Scotland, who were, by the will, made legatees and devisees in case the daughter should die without issue. The evidence which the appellant, who is one of the relatives in Scotland, desired to produce would tend to

show that there had been correspondence, from time to time, between the testatrix and said relatives.   And it was held that the evidence, which it was desired to produce, was not of such importance as to justify the exercise by the general term, of the power given to it by §2586 of the Code.